IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Paul Tarashuk, *Personal Representative of the Estate of Paul David Tarashuck*,<br><br>    Plaintiff,<br><br>v.<br><br>Orangeburg County, Orangeburg County Emergency Medical Services, Danny Rivers, *Individually and in his Official Capacity as the Director of Orangeburg County Emergency Medical Services*, Orangeburg County Sheriff's Office, Leroy Ravenell, *Individually and in his Official Capacity as the Sheriff of the Orangeburg County Sheriff's Office*, South Carolina Department of Public Safety, Leroy Smith, *Individually and in his Official Capacity as the Agency Director of the South Carolina Dept. of Public Safety*, Town of Santee, Joseph Serrano, *Individually and in his Official Capacity as the Chief of Police of the Town of Santee*, Jamie D. Givens, Alison K.B. Harmon, Clifford A. Doroski, Fred D. Rice, Buist M. Smith, and Keith A. Cline,<br><br>    Defendants. | Civil Action No.: 5:19-cv-02495-JMC<br><br><br><br>**ORDER AND OPINION** |

  Before the court is a Motion for Summary Judgment filed by Defendants Orangeburg County Sheriff's Office ("OCSO"), Sheriff Leroy Ravenell in his individual capacity, and Clifford A. Doroski (collectively, "OCSO Defendants"). (ECF No. 83.) Plaintiff filed a Response opposing the Motion (ECF No. 104), to which OCSO Defendants replied (ECF No. 115).

  For the following reasons, the court **GRANTS IN PART** and otherwise **DEFERS RULING** on the Motion for Summary Judgment. (ECF No. 83.) In particular, the court grants

summary judgment as to the claim brought under 42 U.S.C. § 1983 for "negligent supervision/training" against Sheriff Ravenell in his individual capacity, as set forth in the Tenth Cause of Action within the Complaint. (*See* ECF No. 1-5 at 67-69.) The court likewise dismisses any *Monell* claim under section 1983 against OCSO and Sheriff Ravenell, to the extent they have been brought.

As brief background,[1] a little before 6:00 a.m. on September 10, 2018, a vehicle hit and killed Paul David Tarashuk ("Tarashuk") while he was a pedestrian on I-95. (ECF No. 1-5 at 29 ¶¶ 152-53.) The night before, near 11:00 p.m., a truck driver called 911 to report that a man, later identified as Tarashuk, had climbed naked onto the trucker's tractor trailer at an on-ramp; rode on the catwalk while the truck traveled on I-95; detached "air lines" to the truck's brakes, forcing the truck to stop; and repeatedly attempted to enter the cab while the truck sat parked on the highway's shoulder.[2] (*See* ECF Nos. 80-1 at 2-3; 94 at 3-4; 94-6 at 1-3.) Officers from three law enforcement agencies eventually responded, questioned Tarashuk, and received incoherent, bizarre, and/or inconsistent responses.[3] (ECF No. 81-2 at 2.) EMS was requested, which later arrived at the scene and began evaluating Tarashuk. (ECF No. 1-5 at 13 ¶ 65, 15 ¶ 76, 22 ¶ 119.) Around 2:00 a.m. the next morning, a deputy dropped Tarashuk off at a gas station with no money, cell phone, or identification, while wearing nothing but red shorts provided by the trucker. (*See* ECF No. 96-16 at 4.) Tarashuk found his way back to I-95 and died later that morning.

Subsequently, Plaintiff's Estate filed suit against the above-captioned Defendants. (*See* ECF No. 1-5.) Defendants removed the matter to federal court in September 2019. (*See* ECF No.

---

[1] Additional background is available in the court's prior Orders. (*See* ECF Nos. 118, 119.)
[2] The Complaint alleges Plaintiff was suffering from a schizophrenic event while traveling down I-95 and was run off the road between 9:00 p.m. and 11:00 p.m. (ECF No. 1-5 at 10 ¶ 44-47.)
[3] Law enforcement and OCEMS were unaware of Plaintiff's identity throughout their interactions as he refused or was unable to state his full name and carried no identification.

1.) Primarily at issue is Plaintiff's claims under section 1983 for negligent supervision and/or training against Sheriff Ravenell in his individual capacity, as well as *Monell* claims against Sheriff Ravenell and OCSO.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

When considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under governable law will properly preclude the entry of summary judgment." *Id.* at 248. Further, to show that a genuine issue of material fact exists, the non-moving party must set forth facts beyond "[t]he mere existence of a scintilla of evidence." *Id.* at 252. The non-moving party must present evidence sufficient to demonstrate that a reasonable jury could return a verdict for the non-moving party in order to avoid summary judgment. *See id.* at 248.

A supervisory liability claim under section 1983 requires Plaintiff to demonstrate:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

> To satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal citations omitted).

OCSO Defendants emphasize the Complaint does not sufficiently allege a claim for negligent supervision or training under section 1983 against Sheriff Ravenell. (ECF No. 83-1 at 21-23.) Specifically, they claim the Complaint makes little mention of Sheriff Ravenell and contains no "factual allegations showing any individual action" that Sheriff Ravenell personally took to violate the constitution. (*Id.* at 21.) OCSO Defendants further insist there are simply no allegations that "Sheriff Ravenell had actual knowledge that Doroski was engaging in conduct that posed a pervasive and unreasonable risk of constitutional injury to Tarashuk[.]" (*Id.* at 22-23.) OCSO Defendants also observe "there were no prior disciplinary issues with Doroski or prior incidents similar to the present case that would provide Sheriff Ravenell notice that any OCS[O] employee was engaging in conduct that posed a pervasive and unreasonable risk of constitutional injury to Tarashuk." (*Id.*) In response, Plaintiff simply notes that Sheriff Ravenell is responsible for ensuring "the deputies follow the policies of the sheriff's office." (ECF No. 104 at 41.)

Here, the section 1983 claim against Sheriff Ravenell is entitled to dismissal. Plaintiff's conclusory and unspecific assertions that Sheriff Ravenell, *inter alia*, "knew or should have known of the necessity and opportunity for exercising control over Doroski's conduct"; "failed to adequately train and/or supervise Defendant Doroski"; and "authorized" or "ratified the wrongful conduct of Defendant Doroski in regards to Mr. Tarashuk" are simply wholly inadequate to sustain a claim for negligent supervision or training under section 1983. (*See* ECF No. 1-5 at 67-69.) As

OCSO Defendants point out, Plaintiff has not sufficiently demonstrated or alleged that Sheriff Ravenell had constructive or actual knowledge of conduct undertaken by Doroski that posed "a pervasive and unreasonable risk" of violating Plaintiff's constitutional rights. Indeed, beyond the allegations outlined above, there do not seem to be any other allegations that Sheriff Ravenell personally undertook action to violate Tarashuk's constitutional rights.

Somewhat relatedly, Plaintiff also insists he has brought a *Monell* claim under section 1983 against OCSO and Sheriff Ravenell, apparently pointing to the allegations contained within the Tenth Cause of Action in the Complaint (which is captioned as a section 1983 claim for "negligent supervision/training") for support. (ECF No. 104 at 41-42.) According to *Monell*,

> "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A plaintiff can make such a showing by demonstrating (1) an express or written policy, (2) the decisions of a person with policymaking authority, (3) a failure to properly train officers demonstrating a deliberate indifference to citizens' rights, or (4) a practice that is so persistent it constitutes a custom or usage with the force of law. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

*Pratt-Miller v. Arthur*, 701 F. App'x 191, 192-93 (4th Cir. 2017).

Yet, even assuming Plaintiff has sufficiently plead a *Monell* claim under section 1983, it must fail. First, as explained in the court's prior Order, such a claim is barred by sovereign immunity against OCSO and Sheriff Ravenell in his *official* capacity, in part because it is undisputed they are considered "arms of the State." (*See* ECF No. 122.) And second, to the extent Plaintiff brings this claim against Sheriff Ravenell in his *individual* capacity—which is unclear to the court—it would still fail.

> Whether a public entity has adopted an unconstitutional policy is relevant only when examining the basis for *municipal* liability under § 1983. This is, however, not the right question to ask when confronting a supervisor's potential liability in

5

his individual capacity. Rather, where the only remaining claims are against a public official in [his] individual capacity, to hold the official liable for [his] subordinate's conduct, *that conduct must meet the test for supervisory liability*.

*Pratt-Miller*, 701 F. App'x at 193 (emphasis altered) (citing *Mikkelsen v. DeWitt*, 141 F. App'x 88, 90-91 (4th Cir. 2005)). As examined *supra*, Plaintiff not demonstrated that Sheriff Ravenell's conduct has met the test for supervisory liability.[4] Thus, any *Monell* claim brought under section 1983 is consequently subject to summary judgment.

Accordingly, after careful consideration, the court **GRANTS IN PART** and otherwise **DEFERS RULING** on the Motion for Summary Judgment. (ECF No. 83.) In particular, the court grants summary judgment as to the claim brought under section 1983 for "negligent supervision/training" against Sheriff Ravenell in his individual capacity, as set forth in the Tenth Cause of Action within the Complaint. (*See* ECF No. 1-5 at 67-69.) The court likewise dismisses any *Monell* claim under section 1983 against OCSO and Sheriff Ravenell, to the extent such claims have been brought.

**IT IS SO ORDERED.**

J. Michelle Childs
United States District Judge

July 29, 2021
Columbia, South Carolina

---

[4] The court notes that, in any event, Plaintiff's sole citation in support of his *Monell* claim is inapposite. *See Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001). There, the Fourth Circuit decided a school principal had constructive knowledge of a risk to students when the supervising principal previously observed the subordinate teacher let a student sit on his lap, and knew the teacher "was very physical with his students" in general and "frequently took male students on camping trips at which no other adults were present." *Id.* at 235. The Fourth Circuit decided a jury "could reasonably infer that [the principal's] failure to respond to mounting evidence of potential misconduct by [the teacher] exhibited deliberate indifference." *Id.* at 236. In the instant case, no such facts of a similar nature or magnitude related to Sheriff Ravenell's knowledge have been shown or alleged.