# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

| | |
|---|---|
| Paul Tarashuk, *Personal Representative of the Estate of Paul David Tarashuk*, | )<br>)   Civil Action No.: 5:19-cv-02495-JMC<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| Orangeburg County, Orangeburg County Emergency Medical Services, Danny Rivers, *Individually and in his Official Capacity as the Director of Orangeburg County Emergency Medical Services*, Orangeburg County Sheriff's Office, Leroy Ravenell, *Individually and in his Official Capacity as the Sheriff of the Orangeburg County Sheriff's Office*, South Carolina Department of Public Safety, Leroy Smith, *Individually and in his Official Capacity as the Agency Director of the South Carolina Dept. of Public Safety*, Town of Santee, Joseph Serrano, *Individually and in his Official Capacity as the Chief of Police of the Town of Santee*, Jamie D. Givens, Alison K.B. Harmon, Clifford A. Doroski, Fred D. Rice, Buist M. Smith, and Keith A. Cline, | )<br>)<br>)<br>)<br>)<br>)<br>)   **ORDER AND OPINION**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

Before the court is Defendant Alison Harmon's ("Defendant") Motion to Quash Subpoenas (ECF No. 130) issued by Plaintiff Paul Tarashuk's ("Plaintiff") to three healthcare facilities, Three Rivers Behavioral Health ("Three Rivers"), LRADAC, and Prisma Health Baptist – Midlands ("Prisma Health") (collectively, "Treating Facilities"), which retain Defendant's medical and mental health records. (*Id*. at 1.) Defendant alleges the requested records contain highly confidential information which is irrelevant to the issues in this case, and seeks a protective order

1

blocking Plaintiff's efforts to obtain this information.  (*Id*. at 2.)  Plaintiff opposes Defendant's Motion and insists her medical history is relevant to the question of "whether she was under the influence of drugs when she treated Mr. Tarashuk on the morning that he died" or had suffered a relapse prior to or during her employment with Orangeburg County Emergency Medical Services ("OCEMS").  (ECF No. 132 at 1.)  On August 24, 2021, Defendant filed a Reply.  (ECF No. 138.)

For the following reasons, the court **GRANTS** in part Defendant Harmon's Motion (ECF No. 130) such that the Treating Facilities shall not be required to produce records dated before January 8, 2017, and **DENIES** in part Defendant Harmon's Motion (ECF No. 130) to the extent it seeks to prevent the production of records dated between January 8, 2017, and March 10, 2019.

## I.  BACKGROUND

This case stems from the death of Mr. Paul David Tarashuk, who was hit by a car and killed while walking on I-95 on September 10, 2018.  (ECF No. 119 at 2.)  At the time, Defendant worked as a crew chief and paramedic for Orange County Emergency Medical Services ("OCEMS"), which had hired her for the role on January 8, 2018.  The night of Mr. Tarashuk's death, Defendant responded to a call for "alerted mental status" involving the decedent.  Defendant treated Mr. Tarashuk before a police officer dropped him off at a gas station, from where he ultimately wandered back onto the highway, was struck by oncoming traffic, and killed.  (*Id*. at 3.)  Plaintiff alleges Defendant's treatment of the decedent demonstrated a deliberate indifference to his serious medical needs, and in its Order Denying Defendants Harmon and Givens' Motions for Summary Judgment  (ECF Nos. 79 and 82), the court agreed that a reasonable jury could reach this conclusion.  (ECF No. 119 at 12.)  Therein, the court set forth a detailed recitation of the relevant facts.  (*Id*. at 1-6.) The court adopts and incorporates these facts without a full recitation here.

Defendant now moves to quash three subpoenas issued by Plaintiff upon LRADAC, Prisma Health, and Three Rivers pursuant to Rules 26(c) and 45(d)(3)(A) of the Federal Rules of Civil Procedure, or in the alternative, to stay this issue until the qualified immunity issues currently in the United States Court of Appeals for the Fourth Circuit have been resolved on appeal. (ECF No. 138 at 2.) Defendant concurrently requests a protective order covering the records sought by Plaintiff and any similar records pertaining to Defendant's mental healthcare or substance abuse treatment history. (ECF No. 130 at 2.) Plaintiff previously filed a motion to compel Defendant's treatment records from the same three healthcare facilities, which the court denied without prejudice because there was no evidence that Plaintiff had issued subpoenas to these entities.[1] (ECF No. 92.) Plaintiff subsequently served subpoenas on each facility, requesting "any and all medical records pertaining to the treatment" of Defendant. (ECF Nos. 130-1 at 8, 130-2 at 8, and 130-3 at 8.)

Defendant revives her concerns regarding the disclosure of her confidential treatment records in this Motion. Defendant argues the subpoenas should be quashed because (1) Plaintiff has not complied with HIPAA regulations and his attempt to obtain these records is procedurally flawed (*id*. at 4-6); (2) Plaintiff cannot meet the "good cause" requirement of 42 U.S.C. § 290dd-2(C) governing the confidentiality of substance abuse and mental health records, because the balance of interests weighs in favor of Defendant's privacy (*id*. at 7-8); and (3) the records at issue are "irrelevant and disproportionate to the needs of the case," and thus not discoverable under Fed. R. Civ. P. 26 (*id*. at 9-10). In response, Plaintiff counters that Defendant has a long history of prescription drug abuse which substantially affected her employment as a paramedic, endangered

---

[1] The court denied as moot Defendant's concurrent Motion to Quash and Motion for Protective Order (ECF No. 62) in the same order.

the lives of her patients, and led to multiple dismissals by various employers. (ECF No. 132 at 2.) Plaintiff seeks Defendant's substance abuse and mental health treatment records, in part, to determine "whether she was under the influence of drugs when she treated Mr. Tarashuk the morning that he died," or whether she had relapsed before and during her employment with OCEMS. (*Id*. at 1.) Plaintiff argues these records are relevant to the issues in this case because Defendant had previously worked and treated patients under the influence of prescription drugs. In support, Plaintiff attaches a detailed chart which summarizes the history of Defendant's employment, including numerous dismissals, reports of driving under the influence, and other complaints regarding drug use and concerns for patient safety, and a license suspension. (*Id*. at 5-7.)

Relevant to this Motion, the record demonstrates Defendant attended two inpatient treatment programs at Three Rivers: a one-week inpatient treatment program which began on an unknown date before April 1, 2014, and a six-week treatment program between December 2018 and January 2019, which took place about three months after the death of Mr. Tarashuk and two months after Defendant was disciplined by her employer for improper conduct and treatment provided to Tarashuk before his death. (*Id*. at 5, 7.) Defendant was also committed to a seven-to-ten-day treatment program at Baptist Hospital (now Prisma Health) in January 2016. While the dates of Defendant's treatment at LRADAC are not apparent from the record, her motion argues that it "predates the incident in question by years." (ECF No. 130 at 9.) Defendant emphasizes that the events surrounding Mr. Tarashuk's death were extensively investigated by DHEC and the South Carolina Law Enforcement Division ("SLED"), and yielded no evidence that Defendant was under the influence of any substance at the time she rendered treatment. (*Id*. at 10.) Defendant has testified under oath that she was not under the influence of any drugs at that time. (*Id*. at 6.)

4

## II.     LEGAL STANDARD

### A. <u>Discovery Generally</u>

Under the Federal Rules of Civil Procedure, parties are entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "For purposes of discovery, then, information is relevant, and thus discoverable, if it 'bears on, or . . . reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case.'" *Amick v. Ohio Power Co.*, No. 2:13-cv-06593, 2014 WL 468891, at *1 (S.D. W. Va. Feb. 5, 2014) (citing *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 199 (N.D. W. Va. 2000)). "Relevancy is not limited by the exact issues identified in the pleadings, the merits of the case, or the admissibility of discovered information.'" *Id.* (citing *Kidwiler*, 192 F.R.D. at 199). "Rather, the general subject matter of the litigation governs the scope of relevant information for discovery purposes." *Id.* In the context of discovery, therefore, relevant information is broadly defined. *Id.*

In determining whether a party may obtain discovery on a particular matter, the court must also consider the "importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

District courts retain substantial discretion to manage discovery. *U.S. ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002).

5

### B. Motions for Protective Order

The Federal Rules of Civil Procedure permit the court to issue protective orders "'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense' by forbidding or limiting the scope of discovery." *Wellin v. Wellin*, 211 F. Supp. 3d 793, 799 (D.S.C. 2016), *order clarified*, No. 2:13-cv-1831-DCN, 2017 WL 3620061 (D.S.C. Aug. 23, 2017) (citing *Columbus–Am. Discovery Grp.* v. *Atl. Mut. Ins. Co.*, 56 F.3d 556, 568 n.16 (4th Cir. 1995)); *see also* Fed. R. Civ. P. 26(c)(1). Specifically, such orders may also be issued to protect privileged information. *Jordan v. United States*, No. 3:20-cr-00046-01, 2021 WL 3463845, at *3 (S.D.W. Va. Aug. 5, 2021).

A party may withhold otherwise discoverable information by claiming privilege . . . only if the party (i) expressly make[s] the claim; and (ii) describe[s] the nature of the documents, communications, or tangible things not produced or disclosed–and do[es] so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).

The only statutory requirement the court must consider in issuing a protective order is whether good cause was shown. *Rech v. Wal-Mart Stores E., L.P.*, C/A No. 8:19-cv-2514-BHH, 2020 WL 3396723, at *2 (D.S.C. June 19, 2020). While the standard is intentionally broad, it effectively requires courts to balance the benefits of disclosure against its harms. *Wellin*, 211 F. Supp. 3d at 800. This determination turns on the specific facts of each case. *Rech*, No. 8:19-cv-2514-BHH, 2020 WL 3396723, at *2 (citations omitted). It requires the court to weigh the interests of the moving party in maintaining confidentiality against the opponent's interest in access to

information. *Id.* The court will consider a variety of factors in its decision, including "relevance, need, confidentiality and harm." *Snoznik v. Jeld-Wen, Inc.*, 259 F.R.D. 217, 222 (W.D.N.C. 2009). Therefore, "even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome or where the potential harm caused by production outweighs the benefit." *Id.*

Where no protective order is warranted, "the court may, on just terms, order that any party or person provide or permit discovery." Fed. R. Civ. P. 26(c)(2).

### III.     ANALYSIS

#### A. <u>Standing</u>

Before reaching the merits of a motion to quash, the court must first determine whether the moving party has standing to challenge the subpoena. *HDSherer LLC v. Natural Molecular Testing Corp.*, 292 F.R.D. 305, 307 (D.S.C. 2013) (citation omitted). Though parties generally "do not have standing to challenge a subpoena issued to a nonparty," they may do so if they assert "some personal right or privilege in the information sought by the subpoena." *Id.* (citing *United States v. Idema*, 118 Fed. Appx. 740, 744 (4th Cir. 2005)). If the court determines that a party has standing, the court must, on motion, "quash or modify the subpoena if it requires disclosure of privileged or other protected matter . . ." Fed. R. Civ. P. 45(d)(2)(3)(iii).

Courts recognize that individuals have standing to challenge subpoenas for the disclosure of certain personal records, "even where that information is maintained by a third party." *See, e.g., Clark v. Johnson*, No. 14-cv-582-JED-PJC, 2015 WL 4694045, at *1 (N.D. Okla. Aug. 6, 2015) (listing cases and noting that such records include bank records, mental health or medical records, and employment records). Here, while Defendant's treatment records are in the custody of the Treating Facilities upon which Plaintiff's subpoena was served, Defendant plainly has a personal

7

interest in the release and unlawful disclosure of her medical and mental health records. Plaintiff does not challenge Defendant's standing, and the court may adjudicate Defendant's Motion to Quash Plaintiff's subpoenas here.

### B. HIPAA Regulations

Pursuant to 45 C.F.R. § 164.512(e), medical providers ("covered entities" under the regulation) can be required to make certain disclosures of "protected health information in the course of any judicial or administrative proceeding." 45 C.F.R. § 164.512(e)(1). The regulation contemplates two separate types of compulsory disclosures: the first involving a court or administrative tribunal's order that "expressly authorizes" specific information to be released, 45 C.F.R. § 164.512(e)(1)(i), and the second, permitting medical providers to release information in response to subpoenas unaccompanied by court or administrative tribunal orders, 45 C.F.R. § 164.512(e)(1)(ii). The second category of disclosures can only be made if the party seeking the information assures the medical provider that it made reasonable efforts to give notice to the individual whose protected health information is at issue, and the party has made reasonable efforts to obtain a protective order. 45 C.F.R. § 164.512(e)(1)(i)-(ii). "Satisfactory assurances" in this context require an opportunity for the individual to object to the subpoena. 45 C.F.R. § 164.512(e)(1)(iii). Here, Defendant's motion (ECF No. 130) plainly objects to the disclosure of her records. Therefore, the court must first resolve Defendant's objections and determine whether a protective order or confidentiality order must be issued before any requested information is disclosed.

### C. Rule 26

The court turns now to Defendant's substantive objections to the disclosures. The question of Defendant's intoxication at the time of her interaction with Mr. Tarashuk is certainly relevant

and proportional to the needs of this case under the broadly stated definition of Rule 26. *See* Rule 26(b)(1); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350 (1980) (relevance in the discovery context "has been construed broadly."). Notably, information is considered relevant in this context if it "bears on, or . . . reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *See, e,g., Kidwiler*, 192 F.R.D. at 199. Whether a paramedic was intoxicated at the time she treated a patient is highly relevant to the question of her negligence in administering treatment. This information could also identify further negligent conduct from her employer and supervisors. Plaintiff's Response (ECF No. 132) chronicles Defendant's lengthy history of substance abuse in the workplace, which led to multiple firings and generated a voluminous record of complaints that became the subject of several investigations. (*Id*. at 1-8.) While it is true that Defendant has sworn under oath she was not under the influence of any drugs at the time she treated Mr. Tarashuk (ECF No. 130 at 6), Plaintiff is entitled to investigate this point beyond her naked assertions to the contrary. Ultimately, circumstantial evidence of intoxication may be difficult to obtain, especially in the case of an individual who, due to a long history of substance abuse, may be adept at concealing her intoxicated state from others. Moreover, the parties do not indicate that Defendant was subjected to any form of drug testing in the immediate aftermath of the incident. And while Defendant argues vaguely that no evidence of her intoxication was revealed by "extensive post-incident investigations by SLED, [] DHEC and an internal investigation by OCEMS" (ECF No. 130 at 10), she does not point to definitive findings establishing she was *not* under the influence at or near the time of the incident. Nor does Defendant explain how those investigations obviate the need for additional direct evidence of substance abuse or relapse through the requested medical records. At this point, both direct and circumstantial evidence on this issue will be difficult for Plaintiff to obtain through other means.

Thus, while Defendant is certainly entitled to privacy on these sensitive topics, she cannot object to records which may legitimately shed light on her clarity of mind at the time she treated Mr. Tarashuk, and thereby deprive Plaintiff of highly probative and relevant evidence to support his claims.

Defendant correctly states the court may limit discovery to protect "a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). But at the heart of this directive lies the need for the court to balance the burdens of permitting discovery with its likely benefits. *Id*.; *see also Hall v. Sullivan*, 231 F.R.D. 468, 472 (D. Md. 2005) ("Under this Rule, the court makes a determination as to whether documents will be produced after balancing several factors, including whether the discovery-seeking party had sufficient opportunity to discover the information previously, whether the expense and/or burden associated with the discovery request balances with the benefits the information will provide in the case, in addition to the parties' resources and the importance of the discovery as related to the importance of the particular issues implicated by the discovery.)

Given the evidence already on the record, there are reasonable questions surrounding Defendant's sobriety during her employment at OCEMS and at the time she treated Mr. Tarashuk. Evidentiary rules may, depending on the context they are presented, eventually limit admissible evidence of Defendant's past misconduct or discipline. But during discovery, Plaintiff is entitled to follow this factual lead, especially when there is evidence that Defendant attended a rehabilitation program within a few months of the incident (ECF No. 132 at 7), during ongoing investigations of these events. Limiting discovery on this topic would unfairly hamstring Plaintiff's efforts to effectively build his case through unequivocal and direct evidence from

Defendant herself. She may not unilaterally block what may be the only direct evidence of her mental status by citing embarrassment, oppression, or undue burden.

Still, in light of the permitted scope of discovery, Plaintiff must limit his requests to medical records that are relevant to Defendant's intoxication at the time she rendered treatment to Mr. Tarashuk or her relapse before and during her employment at OCEMS. Here, it is unclear which information Plaintiff seeks to obtain from Defendant's treatment records from LRADAC and Prisma Health, which predate the Tarashuk incident by several years. (ECF No. 130 at 5.) While the older records may confirm Defendant's substance abuse at the time she entered each respective treatment program, this evidence is cumulative at best. Plaintiff's own Response indicates that substantial evidence of Defendant's past difficulties with addiction exist on the record, drawn from employment files, DHEC investigative records, and other documentation. (ECF No. 132 at 5-8.) Moreover, discovery to date already confirmed much of this information, and Defendant herself apparently does not deny it. (*Id*. at 5 (citing Harmon Deposition Transcript at 32-52).) The court deems these older records predating Defendant's employment with OCEMS by more than one year irrelevant pursuant to Fed. R. Civ. P. 26(b)(1).

On the other hand, Defendant's treatment records closer to her OCEMS hiring date and several months after Mr. Tarashuk's death are potentially relevant under this reasoning. These records are much more likely to yield admissible evidence of Defendant's contemporaneous intoxication or indicate whether she had relapsed before or around the time she treated Mr. Tarashuk. (ECF No. 132 at 10). Such evidence could also support Plaintiff's arguments regarding the liability of Defendant's employers and supervisors in her hiring or continued employment. (*Id*.) Plaintiff himself emphasizes that the most critical purpose of these records is to shed light on the question of whether Defendant was under the influence of drugs at the time she treated Mr.

Tarashuk, or whether she had relapsed to her addiction beforehand. (*Id*. at 10-11.) Thus, the court concludes it is appropriate to limit Plaintiff's subpoenas to this narrow purpose. The Treating Facilities must produce Defendant's treatment records in accordance with this order and in compliance with the confidentiality directives listed below.

### D. Disclosure of Medical Records under 42 U.S.C. § 290dd-2.

Defendant additionally alleges that the records sought by Plaintiff are afforded additional protections pursuant to 42 U.S.C. § 290dd-2. This statute permits substance abuse treatment records to be disclosed by court order, subject to the following restrictions[2]:

> "**(C)** If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor, including the need to avert a substantial risk of death or serious bodily harm. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure."

42 U.S.C.A. § 290dd-2 (West).

Defendant contends that Plaintiff cannot satisfy the requirement of "good cause," because the records are not sought to "avert a substantial risk of death or serious bodily harm," and there is no public interest to justify their disclosure. Defendant argues the balance of interests weighs in favor of Defendant's privacy and maintaining "the sanctity of the physician-patient relationship." (ECF No. 130 at 708.) It is clear from the language of the statute however, that the use of records to avert death or serious bodily harm is merely *one example* of how a party seeking records can demonstrate good cause. In all other cases, the court must weigh the interests cited by the text of the rule: the public interest and need for disclosure against the risk of injury to the

---

[2] The statute permits the disclosure of records to medical personnel for emergency purposes, to qualified personnel for scientific research purposes and to public health authorities, but both parties agree that these provisions are inapplicable here. *See* 42 U.S.C.A. § 290dd-2(A), (B), (D) (West).

patient, the physician-patient relationship, and the treatment services. 42 U.S.C.A. § 290dd-2(C) (West).

Defendant's argument on this ground ignores a crucial component of the public interest factor: the need to further the truth-seeking function of this trial court. The purpose of discovery in the American adversarial system is to avert trial by surprise and to allow parties to investigate the events surrounding a claim, gather and test evidence, and guide the finder of fact to the truth of the matter at hand. In weighing these considerations, therefore, the court must also consider the possibility that records of Defendant's treatment *could* uncover evidence of substance abuse or possible relapse, which would go a long way to resolving the ultimate question of what happened to Mr. Tarashuk the night before his death. The statutory balancing test affirms the court's reasoning. Of course, the court recognizes that the disclosure of substance abuse treatment records may indeed harm Defendant's confidentiality interest in the records, and marginally affect the broader physician-patient relationship and treatment services generally by deterring individuals from seeking mental healthcare if their records may, in certain narrow instances, be disclosed in litigation. In this case, however, the fact of Defendant's substance abuse is a matter of public record (ECF No. 132 at 10), and Plaintiff supports the entry of confidentiality order that limits the disclosure of Defendant's information to matters immediately relevant to this case and redacts irrelevant information (*id*.). This protects Defendant's privacy interest in her records while preventing her from hiding relevant and important evidence under the guise of confidentiality. Indeed, the only information that this limited disclosure would provide is that which directly concerns her substance abuse on the night she treated Mr. Tarashuk or possible relapse before or during her employment with OCEMS. While Defendant may prefer to keep such facts private, they do not implicate unique privacy interests beyond those generally applicable to any mental

health records. In other words, this is no broad and public disclosure of Defendant's private medical information. The harm to Defendant, the physician-patient relationship, and treatment services from the carefully limited disclosure of Defendant's relevant substance abuse records is therefore negligible here, and at any rate, outweighed by the importance of the information sought to Plaintiff's case. Thus, under the balancing test espoused by 42 U.S.C. § 290dd-2(C), the court draws the line as follows: Pursuant to Plaintiff's subpoenas, the Treating Facilities must produce Defendant's treatment records dated between January 8, 2017, and March 10, 2019. This covers the one-year period preceding her hiring by OCEMS, and the six-month period following the date of Mr. Tarashuk's death. Plaintiff shall have leave to refile should discovery reveal the need for more information that would warrant the production of additional records.

### E. Protective Order

While the court will not issue a broad protective order regarding records preceding the Tarashuk incident by several years, it notes that under existing facts, any such records are irrelevant and therefore shall not be discoverable in this case. For those records that will need to be produced pursuant to this order, the need for further protection is beyond dispute. Any protected medical and mental health records obtained through these subpoenas must only be used for the purposes of litigation as outlined in this order, and, when used as supporting exhibits, filed under seal with the court. *See* 45 C.F.R. § 164.512(e)(v)(A). Any records retained by the parties at the end of litigation must be returned or destroyed. *See* 45 C.F.R. § 164.512(e)(v)(B).

### IV.     CONCLUSION

For the reasons above, the court **GRANTS** in part Defendants' Motion to Quash (ECF No. 130) such that the Treating Facilities shall not be required to produce records dated before January 8, 2017, and **DENIES** in part Defendant Harmon's Motion (ECF No. 130) to the extent it seeks to

prevent the production of records dated between January 8, 2017, and March 10, 2019. Plaintiff shall have leave to refile should discovery reveal the need for more information that would warrant the production of additional records. All medical records should be filed under seal and may only be used for the purposes outlined in this order.

    **IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

February 15, 2022
Columbia, South Carolina